FIRST NATIONAL BANK OF YANKTON, Respondent, v.
WAGNER et al, Appellants.

(213 N. W. 3.)

(File No. 5675. Opinion filed April 11, 1927.)

1. **Estoppel—Alteration Of Contract—Contracts—Guarantors Could
Not Assert Alleged Alteration of Contract By Addition Of
Signature After Challenging For Want Thereof (Rev. Code
1919, § 910).**

   In bank's suit on notes and guaranty contract given in con-
sideration of assuming another's deposit liabilities, makers and
guarantors were not entitled to assert alleged alteration of con-
tract by addition of signature of another after alleging want of
such signature as defense in prior suit thereon, under Rev. Code
1919, § 910, providing that executory obligations are extinguish-
ed by alteration against parties not consenting thereto.

2. **Estoppel—Guarantors Held Estopped To Deny Contract's Delivery
After Accepting and Retaining Benefits (Rev. Code 1919, §
833).**

   In bank's suit on notes and guaranty contract given in con-
sideration of assuming another's deposit liabilities, makers and
guarantors were estopped to deny delivery of contract on ground
of want of another's signature, where they accepted and retain-
ed payments thereunder and should have known lack of sig-
nature, under Rev. Code 1919, § 833, providing that voluntary
acceptance of benefits is equivalent to consent to obligations of
transaction.

3. **Guaranty—Time—Guaranty Held Not Avoided By 15 Months' De-
lay in Procuring Additional Signature, Where Time Was Not
Expressly Of the Essence (Rev. Code 1919, § 888).**

   Contract guaranteeing bank's deposit liabilities on condition
that another sign forthwith held not avoided by 15 months'
delay in procuring signature, where time was not expressly of
essence of contract, and such person's financial condition re-
mained unchanged, under Rev. Code 1919, § 888, providing
that time is not of essence of a contract unless expressly so
provided.

4. **Contracts—Reasonable Time is Allowed for Performance, Where
Time is Not of Essence of Contract.**

   Where time is not of the essence of a contract, reasonable
time is allowed for performance.

5. **Contracts—"Reasonable Time For Performance" Depends On
Circumstances, Where Time Is Not of Essence of Contract.**

   What is a "reasonable time for performance" of contract of
which time is not of the essence depends on circumstances of
each case.

Note.—See, Headnote (1), American Key-Numbered Digest, Estoppel, Key-No. 68(2), 21C. J. Sec. 232; (2) Estoppel, Key-No. 92(2), 21 C. J. Sec. 211; (3) Guaranty, Key-No. 11, 28 C. J. Sec. 44; (4) Contracts, Key-No. 212(1), 13 C. J. Sec. 776; (5) Contracts, Key-No. 212(1), 13 C. J. Sec. 782.

As to what constitutes reasonable time for performance of contract where no time specified, see annotation in L. R. A. 1916E, 6 R. C. L. 896; 2 R. C. L. Supp. 238; 4 R. C. L. Supp. 450; 5 R. C. L. Supp. 376; 6 R. C. L. Supp. 418.

Appeal from Circuit Court, Yankton County; Hon. R. B. Tripp, Judge.

Action by the First National Bank of Yankton, S. D., a corporation, against George C. Wagner and others. Judgment for plaintiff, and from an order denying a new trial defendants appeal. Affirmed.

*H. A. Doyle,* of Yankton, and *G. M. Caster,* of Lake Andes, for Appellants.

*Orvis & French* and *A. L. Wyman,* all of Yankton, for Respondent.

MORIARTY, C. This action was begun by the respondent to recover on certain promissory notes. The case was tried as a jury case, but the court directed a verdict for plaintiff, and from the judgment entered upon said verdict and from the order denying a new trial defendants appeal.

In June, 1922, the appellant National Bank of Commerce was financially embarrassed, and on the 17th day of that month W. E. Heaton, a managing officer of respondent bank, met with the personal appellants and with representatives of the appellant bank to devise means for liquidating the affairs of the appellant bank without loss to creditors of said bank or resort to the stockholders' liability. As a result of these negotiations the following promissory notes were executed and placed in the hands of said W. E. Heaton, as a representative of the respondent bank: One note for $5,000, signed by George C. Wagner as maker, and indorsed by each of the other appellants; one note for $5,000, signed by Norman C. List as maker, and indorsed by each of the other appellants; one note for $8,500, signed by Charles F. Blachnik as maker, and indorsed by each of the other appellants; one note for $5,000, signed by C. F. Rossteuscher as maker, and indorsed by

each of the other appellants. Each of these notes was payable to respondent bank on December 17, 1922.

At the same time and place a written agreement was signed by the parties to this litigation and was placed in the hands of said W. E. Heaton as a representative of the respondent bank. This writing was as follows:

"It is agreed by and between the National Bank of Commerce of Yankton, South Dakota, George C. Wagner, Norman C. List, Charles F. Blachnik, W. J. Blachnik, E. A. Royem, C. F. Ross-teuscher, F. G. Sickmann and George H. Cook, parties of the first part, and First National Bank of Yankton, South Dakota, and W. E. Heaton, parties of the second part, as follows:

"Said National Bank of Commerce hereby sells, assigns and transfers to said First National Bank, the notes, warrants and money described and listed on Exhibit A, attached hereto as a part of this agreement.

"Said George C. Wagner, Norman C. List, Charles F. Blach-nik, W. F. Blachnik, E. A. Royem, C. F. Rossteuscher, F. G. Sick-mann, and George H. Cook hereby agree to forthwith execute and deliver to said First National Bank their promissory notes aggre-gating the sum of $23,500, a list and description of which is at-tached hereto, marked Exhibit B and made a part of this agree-ment.

"Said First National Bank hereby assumes and agrees to pay all liabilities of said National Bank of Commerce to its depositors as the same become due and payable. A list of said depositors showing the amount due each of them and the time when the same is payable is attached hereto, marked Exhibit C and made a part of this agreement.

"Said National Bank of Commerce hereby assigns and delivers to said W. E. Heaton, as liquidating agent, all other assets of said National Bank of Commerce including its furniture and fixtures and all bills receivable not hereinbefore referred to. A list and description of said assets is hereto attached, marked Exhibit D and made a part of this agreement.

All property described in Exhibit D is to be held and collected or sold and disposed of by said W. E. Heaton as liquidating agent of said National Bank of Commerce, and the proceeds of said

property shall be held and used by said W. E. Heaton for the following purposes:

"1. In paying all costs, collection fees, traveling and other expenses, and attorney's fees, if any, incurred by said Heaton as such liquidating agent, and his compensation for services which shall be ten per cent (10 per cent) of all moneys received as proceeds of the property listed and described in Exhibit D.

"2. For the payment to said First National Bank of the difference between what it may collect upon the bills receivable described in Exhibits A and B hereto attached and the amount said First National Bank shall be required under this agreement to pay to the depositors of said National Bank of Commerce.

"3. If there shall be any surplus remaining after making said payments, such surplus shall be paid to the stockholders of said National Bank of Commerce.

"Said National Bank of Commerce and said George C. Wagner, Norman C. List, Charles F. Blachnik, W. J. Blachnik, E. A. Royem, C. F. Rossteuscher, F. G. Sickmann, and George H. Cook hereby guarantee all accounts of said National Bank of Commerce to be correct and they also guarantee the payment of all bills receivable described and listed in Exhibits A and B, including collection fees, attorneys' fees, traveling expenses, and other costs incurred, if any, in collecting same." * * *

"Dated at Yankton, S. D., this 17th day of June, 1922. National Bank of Commerce, Yankton, S. D., by E. A. Royem, V. Pres. [Seal.] First National Bank of Yankton, S. D., by W. E. Heaton, Cash. [Seal.] Geo. C. Wagner. Norman C. List. Charles F. Blachnik. W. J. Blachnik. E. A. Royem. C. F. Rossteuscher. F. G. Sickmann. Geo. H. Cook."

Exhibit B referred to in this agreement lists the four notes above described. Exhibit A lists a large number of notes payable to the appellant National Bank of Commerce, part of these notes being held by the Federal Reserve Bank as collateral to debts of the appellant bank.

The respondent bank took possession of these notes described in Exhibit A and proceeded to collect part of them. The respondent bank also proceeded to pay off the liabilities of the appellant bank, and in so doing paid about $18,000 to appellants C. F. Blachnik, W. J. Blachnik, George H. Cook, George C. Wagner,

F. G. Sickmann, and C. F. Rossteuscher, and over $10,000 to the Treasurer of Yankton County. The total liabilities of the appellant bank which were assumed and paid by respondent bank aggregated about $60,000.

In January, 1923, the respondent brought suit against appellants for $48,672.44 on the four promissory notes made by appellants George C. Wagner, Norman C. List, Charles F. Buachnik, and C. F. Rossteuscher, and on certain of the notes enumerated in Exhibit A attached to the guaranty agreement, which notes were alleged to remain unpaid. To the complaint in that action the defendants answered denying liability on the ground that neither the promissory notes made by the four defendants aforesaid nor the guaranty agreement ever became effective because neither of said writings was ever legally delivered, in that all of said writings were placed in the hands of the aforesaid W. E. Heaton with the express stipulation and understanding that they were not to become effective unless or until the signature of one J. W. Jury was attached to each of the papers signed by the defendants, and that such signature had never been so attached. Before the trial of the issues so joined the plaintiff moved to dismiss without prejudice. This motion was granted, and an order dismissing without prejudice was entered. Thereafter the signature of J. W. Jury was attached to the guaranty agreement and indorsed upon the back of each of the four promissory notes made by appellants Wagner, List, Blachnik, and Rossteuscher. This signature was secured about 15 months after the date of the guaranty agreement.

After this was done plaintiff brought this suit for $38,365.60 on the four notes running directly to it as aforesaid and on what remained unpaid upon the notes originally payable to the National Bank of Commerce; the difference between this amount and that named in the former action being due to the fact that about $10,000 had been collected in the interim from the latter class of notes.

To the complaint in this action the appellants presented the same defense as in the former action, alleging that the four notes were made and indorsed, the guaranty agreement signed, and all the papers delivered to Heaton with the express understanding that none of the papers should become binding unless Heaton should "at the time" secure the signature of J. W. Jury to each of the

obligations signed by appellants, and that the said signature of said Jury had never been attached to the said instruments. This answer admitted the signing of the papers as alleged in the complaint.

At the trial the court allowed the defendants the opening and closing. W. E. Heaton was examined as an adverse witness and identified the notes and guaranty agreement and testified as to the time Jury's signature was secured. He admitted that at the time the papers were executed some of the appellants said that as Jury had been in active management of the bank he should sign with appellants, and that he said that he thought Jury should sign. But he specifically denied that he ever undertook to secure Jury's signature or that there was any statement or agreement that the papers should not be effective without that signature. Appellants offered to prove by the testimony of several of themselves that they were present at the time the papers were signed and given to Heaton, and that it was there stated that unless Heaton secured Jury's signature *that evening* the papers would not become effective. The court denied this offer on the ground that even if there were such statements made, time was not of the essence of the contract, and, as Jury had finally signed and the defendants had accepted the benefits of the contract, the delay in securing Jury's signature would not be a valid defense unless it was contended that such delay had resulted in damage to defendants. Jury was put on the stand, and his evidence showed that he was insolvent both at the date of the contract and at the time he signed it.

The notes and the contract being in evidence, and the exhibits attached to the contract showing the liabilities assumed by respondent bank and the amount thereof payable directly to the appellants appearing as personal defendants, the court granted a motion for a directed verdict, a verdict was rendered accordingly, and a judgment entered in favor of respondent for the amount found to be due on the several notes sued upon.

The appellants assign numerous alleged errors dealing with the admission and rejection of evidence and with the sufficiency of the evidence to justify the direction of a verdict. But an analysis of these assignments, and of the arguments advanced in support of them, discloses the fact that all the points raised depend upon the single question whether, under the undisputed facts (as to the consideration passing from the respondent, the acceptance of

benefits by appellants, and proof that the financial status of Jury had not changed between the date of the guaranty agreement and the time of his signing), proof that there was an understanding that the notes and guaranty should not become effective unless Jury's signature was immediately attached would constitute a valid defense.

Appellants' counsel put their argument somewhat in the form of a dilemma. They say, if it was understood that the guaranty agreement was not to be effective until signed by Jury, then it never became effective, because upon learning that Jury had not signed they notified respondent that their offer of guarantee was withdrawn, and that the giving of this notice before Jury signed completely terminated the transaction. And they say that, on the other hand, if the contract was a complete and valid contract without the signature of Jury, then by securing that signature respondent caused a material alteration of a completed contract to be made and thereby nullified the contract.

[1] The answer to this argument is that respondent's representative may have believed in perfect good faith that the contract was valid and legally delivered without Jury's signature, but when appellants came into court alleging that they had made it the duty of Mr. Heaton to secure Jury's signature, it cannot be said that the securing of that signature was such alteration as would release appellants.

Section 910, R. C., is the statute which provides for the nullification of contracts by material alteration, and that section provides:

"The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

When appellants came into court alleging that they had made it the duty of respondent's agent to secure Jury's signature, they estopped themselves from denying that they had consented to the securing of that signature.

[2] As to their theory that the writings in Heaton's hands constituted a mere offer which they had withdrawn before Jury signed, section 833, R. C., provides:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting."

When appellants accepted from respondent the respective sums due to them from the National Bank of Commerce they accepted the obligations of the guaranty contract, for they must have known that the payments were being made under the provisions of that contract, and if they considered Jury's signature of any importance they could readily have informed themselves as to whether it had been secured or not before accepting the payments. Having accepted, they cannot avoid the expressed obligations of the contract without restoring what they received.

[3] This leaves the single question whether in case there was an agreement that the contract should not become effective unless Jury signed *at that time,* the 15 months' delay in securing that signature rendered the contract void.

Section 888, R. C., provides:

"Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

[4, 5] Time was not expressly made of the essence by the terms of the contract as written. Nor was there any evidence or offer of proof that it was orally agreed that time should be of the essence. Had the writing itself contained exactly what appellants say was orally agreed upon, that would not have made time of the essence of the contract. Where time is not of the essence a reasonable time is allowed for performance. The question of what constitutes a reasonable time depends upon the circumstances of each particular case. Western Town Site Co. v. Lamro Town Site Co., 31 S. D. 47, 139 N. W. 777; Phillis v. Gross, 32 S. D. 438, 143 N. W. 373.

It is apparent that the delay in securing Jury's signature was in no way prejudicial to appellants. Even admitting that evidence of the oral agreement was admissible to show want of legal delivery without the signature of Jury, the appellants should not be permitted to accept all the benefits of the contract and escape all its obligations because of mere delay in the performance of an act which was of little or no importance to them, and when the

delay in no way diminished any benefit which the performance of the act might confer upon them.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed.

GATES, POLLEY, SHERWOOD, and BURCH, JJ., concur.

CAMPBELL, P. J., concurs in result.