Donald W. **FRIESS**, Plaintiff
and Appellant,

v.

**ZIP FEED MILLS, INC.**, a Corporation,
Defendant and Appellee.

No. 13458.

Supreme Court of South Dakota.

Argued March 23, 1982.

June 30, 1982.

F. M. Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.

Lyle J. Wirt of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee; Sarah L. Richardson of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief.

WUEST, Circuit Judge.

Appellant, Donald W. Friess, was employed by Zip Feed Mills, Inc., (appellee) for approximately twenty-five years prior to December 31, 1972. While so employed he served in various positions, including those of comptroller and secretary-treasurer. For a period of time he processed the pensions for retiring employees. In October 1972 he was notified by appellee's board of directors that his services would be terminated effective December 31, 1972.

During the period of appellant's employment there was in force and effect an insurance policy providing retirement and death benefits for appellee's employees. This policy was issued by Mutual Life Insurance Company of New York (MONY). On December 15, 1972, appellee changed its insurance coverage from MONY to Aetna Life Insurance Company (Aetna). The change was made because appellee's cash contributions to its retirement plan could earn a higher interest rate with Aetna than with MONY. It was stated in the contract with Aetna that,

> This revised Plan is a restatement and continuation of Retirement Plan for Employees of Zip Feed Mills, Inc., first established as of November 1, 1961 under a contract No. K–5214 ... between the Employer and Mutual Life Insurance Company of New York. Plan benefits as herein set forth will continue to be funded under the group annuity contract entered into by the Employer and Aetna Life Insurance Company, ... as of December 15, 1972.

Prior to his termination, appellant had acquired vested rights in the MONY policy, such as annuity benefit coverage without further premium payment, the right to early retirement income, and the right to payment of cash value.

There were extensive negotiations concerning appellant's forthcoming termination, and on December 22, 1972, the parties entered into a written agreement prepared by appellee's attorney settling their differences. Paragraph 1 of the agreement stated that appellee would provide and assure appellant a pension in the sum of $643 per month when he became sixty-five, and lesser amounts if retirement commenced at an earlier age. By letter dated July 25, 1979, appellant notified appellee that he was electing to receive the monthly pension benefit of $643 specified in the December 22, 1972, agreement, effective upon his reaching age sixty-five on August 6, 1979. Appellant also elected to receive monthly payments from MONY in the amount of $189.71 upon reaching age sixty-five.

It is appellant's position that he is entitled to receive a monthly pension from appellee in the amount of $643 undiminished by any amount that he receives from MONY. Appellee contends, and the trial court so held, that the $643 monthly pension guaranteed by the terms of the December 22, 1972, agreement was to be funded in part by the monthly payment due appellant under the MONY policy and in part by the pension plan established with Aetna.*

The agreement is silent as to the funding sources of the pension to be provided and assured appellant. During the trial, evidence was submitted and received without objection regarding the intention of the parties. As trial strategy both parties chose to submit evidence under the rule that:

If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties.... The construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court (citations omitted).

See *Huffman v. Shevlin*, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955).

Appellant testified that when he signed the agreement he did not know that the pension benefits were to be derived from both MONY and Aetna and that he did not think that MONY had anything to do with it.

The testimony of the attorney for appellee who drew the contract was vague at best, but he implied that appellant knew that the agreement included both the MONY and Aetna policies.

Additional evidence showed that in 1973 a representative of Aetna sent appellant a letter specifically stating that "a portion of your monthly pension income will be provided by the Aetna Life & Casualty and another portion will be provided by the Mutual of New York under a previous pension arrangement with Zip Feed Mills." Upon receipt of this letter, appellant sent a letter to appellee's attorney in which he expressed concern about the relationship of his pension payment to the varying Social Security benefits. However, appellant made no reference to and expressed no concern about the mutual funding of his pension by MONY and Aetna. Appellant stated in his letter that at the time of the December 22, 1972, agreement, "[i]t was understood" that the obligations of appellee "would be funded by insurance." Appellee's response to the letter included a reference to a copy of a booklet entitled, "Retirement Plan for Full-Time Employees of Zip Feed Mills, Inc.," the first page of which states that those employees who were members of the plan prior to the change from MONY to Aetna will receive their retirement benefits in part from Aetna and in part from MONY.

■ On appeal, all conflicts in the evidence must be resolved in favor of the trial

---

* As it finally developed, appellee itself was required to contribute $89.75 towards the $643 monthly payment guaranteed appellant because of a change in the primary social security benefit that determines the amount due from Aetna. As set forth in the trial court's judgment, the $643 monthly payment due appellant is derived from the following sources:

| | |
|---|---|
| Aetna | $363.54 |
| MONY | $189.71 |
| Appellee | $ 89.75 |

court's findings. By rule this court is bound to apply the clearly erroneous test. SDCL 15–6–52(a). A finding is not clearly erroneous unless the appellate court on the entire evidence "is left with the definite and firm conviction that a mistake has been committed." *In re Estate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970).

■ Considering the provisions of the agreement, the testimony and other evidence, we conclude that the trial court did not err in finding that at the time he signed the December 22, 1972, agreement appellant desired a guaranteed pension in terms of a specific monthly amount and that he was aware that appellee's pension plan was fully funded by insurance purchased by appellee. Likewise, the trial court did not err in concluding from these findings that the monthly payment from MONY in the amount of $189.71 constitutes a partial funding of the amount due appellant under the terms of the agreement.

The judgment appealed from is affirmed.

All the Justices concur.

WUEST, Circuit Judge, sitting for DUNN, Justice, disqualified.